JAMES WILLIAMS, plaintiff in error, *vs.* JAMES L. WATERS, defendant in error.

1. When one party seeks to recover damages for a violation of a contract, the other party may show that plaintiff has not complied with his obligations under the contract, and, in good conscience, is liable to defendant.

2. There being degrees in secondary evidence, an examined copy should be received in preference to oral testimony, and the best evidence should always be produced.

3. The well established rule of law is, that parol evidence is inadmissible to add to, take from or vary a written contract.

4. The construction of an unimpeached written contract is a question for the Court, whose duty is to ascertain the intention of the parties, if possible, and enforce the contract according to its terms and stipulations.

*Certiorari* from the County-Court. Decided by Judge VASON. Dougherty Superior Court. May (adjourned) Term, 1867.

James L. Waters and certain freedmen farmed during eighteen hundred and sixty-six, in Dougherty County. Plaintiff in error and his wife were two of those freedmen. Differing about their contract, Williams, in behalf of himself and wife, sued Waters in the County-Court, to compel compliance with the contract. General issue, set-off and payment were considered as plead.

A trial was had before a jury.

Plaintiff, introduced in his own behalf, testified: that he and other freedmen made a contract with Waters at the plantation, that they came to town and signed a written contract, in Judge D. A. Vason's office and in his presence, that they took the contract to the agent of the Freedmen's Bureau and he approved it, that the contract was left with said agent, that the agent gave Waters a copy of the contract, that witness had made several applications for the original contract, but had been unable to obtain it, being informed that it was sent to the headquarters of the Bureau.

W. E. SMITH, one of plaintiff's attorneys, testified: that

he had written several times to the headquarters of the Bureau at Savannah, but had received no reply.   Upon this foundation, plaintiff's attorneys proposed to prove the contents of the contract.   Objection was made on the ground that the execution of the contract must first be proved by the subscribing witnesses.

This objection was overruled.

Plaintiff then introduced as a witness, Judge D. A. VASON, who testified: that he drew a contract between Waters and freedmen, and explained the contract to the freedmen in relation to the rent of the land, hire of mules, etc.   Witness was not certain that all the freedmen were present.   Witness told the freedmen he thought it a good contract for them.

Witness's recollection of the contract was, that it was in the nature of a partnership, that Waters furnished the land at a rent of $2,000 which was to be returned at the end of the year, the corn and fodder, eight mules at a hire of $25 each, one wagon at a hire of $25, and plantation tools at a hire of $100; Waters was to furnish the rations for the freedmen and they were to pay for them, the freedmen were to labor on the plantation and obey the orders of Waters, and at the end of the year, after paying expenses, the balance of the crop was to be equally divided, Waters taking one half and the freedmen the other half.

Witness also stated that he knew the plantation, that about four hundred acres of it was open, and that it would have rented for five dollars per acre in eighteen hundred and sixty-six.   He also stated that the paper submitted to him by defendant's attorneys, was in substance, a copy of said contract.

Plaintiff was again introduced in his own behalf.   He testified: that he signed the contract in the presence of Judge Vason and in his office, but that the contract was agreed upon before that time, that when he came to town the contract was drawn up, he and the other freedmen signed it and it was not read over to him ; that by the contract which he and the other freedmen made, they were not to pay anything for rent of land or hire of mules, wagons or plantation tools, that Waters told them so and said he was to furnish these without

rent or hire; that these terms were agreed upon at the plantation before signing the contract in town.

This evidence, as to the terms of the contract, was objected to and the objection overruled.

Plaintiff further testified: that after paying back to Waters all the corn and fodder used, that there remained for division fifteen hundred bushels of corn, five double stacks of fodder, eight and a half barrels of syrup, sixty bushels of potato-slips, a stack of oats, and thirteen bales of cotton weighing each five hundred pounds; that there were fifteen hands, and witness was entitled to two shares (for himself and wife); that he never authorized Waters to pay the bills of Drs. Jennings, Connally and Cromwell, but witness owed said physicians an account; that Waters was to pay six dollars to the freedmen for harvesting the wheat, that he had paid witness twenty dollars for produce sold.

JACK, LANCASTER, ELBERT, SAM and ABRAM, other freedmen who had signed said contract with plaintiff, were then examined by him.

They testified: that they signed the contract in the presence of Judge Vason, at his office; that all of them went with Waters, with the contract, to the Freedmen's Bureau, that the agent approved the contract and said it was a good one, the agent handed Waters a paper, saying it was a copy of the contract; they were not to pay rent for the land, hire of mules, wagon or plantation tools, but Waters was to furnish them, and after paying back corn and fodder and provisions furnished by Waters, and the blacksmith's bill, the balance was to be equally divided between Waters and the freedmen, Waters taking one half and the freedmen the other half; that Waters took one of the field hands to cook for his family.

They all corroborated plaintiff's statements as to the quantity of produce made; two of them testified that the contract was not read to them by Judge Vason, the others that it was, and two stated that the contract was read to them by the Bureau agent, and the others that it was not.

Defendant proposed to prove by these witnesses, that the

crop would have been larger, had the freedmen worked faithfully. The Court refused to allow this. Plaintiff closed.

Defendant testified in his own behalf: that the copy contract exhibited was a true copy of the original, that the original was approved by F. A. Billingslea, Bureau-agent, who pronounced it a good contract for the freedmen, that Judge Vason drafted the contract for him because the freedmen wished him to do so, and that the contract was, the freedmen should pay one-half of the rent of the land, hire of mules, wagons and plantation tools mentioned in the contract; and that by a verbal contract, the freedmen were to furnish a cook, who should share equally with them in the division of the crop; that the freedmen's share of the corn was about six hundred bushels; that they had sold two loads, about sixty or seventy bushels, and that he had paid plaintiff several amounts, in the aggregate $————.

Defendant's attorneys then read in evidence the copy contract, as follows:

"GEORGIA, *Dougherty County.*

James L. Waters has this day made the following contract with the undersigned freedmen. The said Waters furnishes a plantation of four hundred acres in cultivation, which is valued at $2,000; fifteen hundred bushels of corn, valued at $1 per bushel, making $1,500; 10,000 pounds of fodder at 1c, making $100; eight mules, the hire of which is valued at $25 each, to be replaced if one dies or is lost; one two-horse wagon, the use of which is valued at $25, to be returned in good order; the plantation tools, ploughs and gear, the use of which is valued at $100. They are to do all work assigned them or ordered by the said Waters or his agent, and for unfaithfulness may be discharged,—to begin this day, and end the 24th of December, 1866.

The said Waters furnishes also rations for the freedmen, all of which to be returned to him at the end of the year, and the said freedmen are to pay one-half of the expenses of the plantation, or one-half of anything else that may be furnished by said Waters, other than mentioned above, and the crop

that may be made (except the wheat) corn, fodder, cotton, potatoes, etc., shall be equally divided between the said freedmen by disinterested men, and the said Waters to have the other half.

In witness whereof, they have hereto set their hands, this 1st January, 1866."

This contract purports to be signed by the marks of the freedmen, for themselves, their wives and children, tested by "J. B. Brinson," and endorsed "Bureau R., F. and A. L., Albany, Jan'y 1st, 1866."

After argument, the jury returned a verdict for plaintiff for $69.46.

Upon this a *certiorari* was taken. The *certiorari* was sustained and a new trial granted, because the Court below refused to allow Waters to prove that plaintiff was an unfaithful servant, etc., and because he admitted the oral evidence to contradict the written contract.

This granting of a new trial was assigned as error.

STROZIER & SMITH, for plaintiff in error.

WRIGHT & WARREN, for defendant in error.

WALKER, J.

1. The Court did right to grant a new trial in this case. The County-Court erred in refusing to allow evidence to show that plaintiff had not complied with his contract. Defendant has the right to reduce the amount of plaintiff's claim, if he can show that by a failure of the plaintiff to comply with his part of the contract, the defendant suffered loss. If plaintiff failed to work as he contracted to do, he is not entitled, in good conscience, to as much as he would be if he had performed his obligations. Code, sec. 2850 and 2853.

2. There are degrees in secondary evidence, and the best should always be produced. Code, sec. 3691. A sworn copy should be received in preference to verbal testimony, to prove the contents of a written contract. The copy certified by the

agent of the "Bureau," in the absence of the original, is the best secondary evidence, and should exclude oral testimony of what the contract was; unless the written contract can be impeached by some of the modes known to the law, such as fraud, duress, etc.

3. The well established rule of law is, that parol evidence is inadmissible to add to, take from or vary a written contract. Code, sec. 2721.   Therefore a contract reduced to writing, and understood by the parties, should be enforced according to its terms, unless there is an ambiguity in it.   If there be an ambiguity in the written contract, it may be explained; Code, sec. 2729.

4. The construction of a written contract is a question for the Court; Code, sec. 2718; whose duty it is to ascertain the intention of the parties, and enforce the contract irrespective of technical rules.   If, as it would seem from the evidence, the contract, (a copy of which was before the Court,) was made by the parties, the duty of the Court is to construe it, and mete out to all the parties their rights respectively. The writing speaks the language of the contract, and the Court should carry out its stipulations.   We deem it not improper to say, that the rights of the parties, as the facts now appear are to be determined by the writing, the certified and sworn copy of which was before the Court; and the original was read and explained to the parties, both by Judge Vason and the agent of the "Freedmen's Bureau." This is much better evidence of what the contract was, than the interested statement of the parties, made after they had become involved in a lawsuit.

Judgment affirmed.