JAMES P. SIMMONS, plaintiff in error, *vs.* GEORGIA V. MARTIN, administratrix, defendant in error.

1. On 23d February, 1865, Simmons executed to the defendant's intestate, the following paper:

"$1,663 00.· Received of Mrs. C. C. Gordon sixteen hundred and sixty-three dollars (in notes on myself to that amount,) which sum I am to loan out and keep at interest for her during the pleasure of both parties, and to turn over to her the proceeds on request; the interest accruing thereon payable annually in currency, while I manage the same for her; and I hereby agree and bind myself to turn over to her good notes or *fi. fas.* to the amount in demand, and to guarantee the payment thereof."

Suit having been brought on this agreement, Simmons filed a bill praying a construction of the paper, and alleging that in fact he did not, on said 23d of February, 1865, get from Mrs. Gordon his own notes and agree to loan out for her said sum of money, but that some three years before then said notes of his had been satisfied by substituting instead of them certain notes and *fi. fas.* on third persons, which, as her agent, he since then had been managing for her under an agreement with her; that the paper of February, 1865, was merely the carrying into effect the said parol agreement made in 1863, and was made in 1865, because not until then did Mrs. Gordon actually turn over his notes; the bill further alleged that the notes on said third persons were still on hand, and that he ought not to be held to guarantee them, as they were the very debts he had received from her in 1865, and undertaken to loan out and manage:

*Held,* that the legal effect of the agreement is that Simmons took his notes as money and agreed to loan out that sum as her agent, and account for the proceeds on request, paying her the interest received annually, and if, on a settlement, the proceeds should be in notes or *fi. fas.* on third persons, he undertook to guarantee their payment.

2. It was not competent to contradict, by parol, the face of the agreement, by showing that the notes turned over were not Simmons' own notes, but the notes substituted for his by the parties in 1863.

3. Any recognition by Mrs. Gordon of certain notes as hers, after the

Simmons *vs.* Martin.

date of the agreement, or any consent by her that they should be altered in form or compromised by Simmons, cannot be taken as a waiver of the agreement, unless such was her intent.

Contracts. Evidence. Guaranty. Waiver. Before Judge RICE. Gwinnett Superior Court. September Adjourned Term, 1873.

This case is fully reported in the first head-note. The bill therein referred to was dismissed, on motion, for want of equity, and complainant excepted.

JAMES P. SIMMONS; WINN & SIMMONS, for plaintiff in error.

CLARK & PACE; F. F. JUHAN; N. L. HUTCHINS; HILLYER & BROTHER, for defendant.

McCAY, Judge.

1. The first question to be settled in this case is the construction of the "receipt," the collection of which the bill seeks to enjoin. At the reading of it, one almost inevitably concludes it is an acknowledgment by Mr. Simmons that Mrs. Gordon had, on that day, placed in his hands his (Simmons') notes for $1,663 00, and that he undertook, as her agent, to loan out that sum of money for her benefit, for an indefinite time, to pay her the annual proceeds, and to guarantee the solvency of the notes or *fi. fas.*, into which the money might run. Nor, upon a closer inspection, does there appear anything in the paper leading satisfactorily to any different meaning. True, in one place he undertakes to pay her the proceeds, and at the last he says he will *turn over* to her notes and *fi. fas.* to the amount, and guarantee them. But these promises may well be both true. By the proceeds was doubtless meant the money, if it was in hand at the time of her demand, while the last clause refers to any notes or *fi. fas.* he might have arising from his loans. We do not think, therefore, there is any ambiguity on the face of this paper. One

comes almost inevitably, on reading it, to the meaning we have suggested. And, indeed, the whole statements of the bill go upon this idea. Its avowed object is, not to insist that there was no guarantee, or intent to guarantee, any papers he might have on hand as the result of the trust, but to charge that the papers he really has on hand, are upon precisely the same persons—are really the same debts—he that day got; that he never undertook to guarantee the debt on Wynn and his partners, and her interest in the executions; that these debts were not the *proceeds* of what Mrs. Gordon turned over, but the very thing she turned over, and that he ought not to be expected to guarantee the very thing he received.

2, 3. At last, therefore, the real question is, can the complainant, under the law, be allowed to show by parol that instead of receiving from Mrs. Gordon his own notes, and agreeing to treat them as cash in his hands to be loaned out for her benefit, he, in fact, had long before, under a parol agreement, exchanged other notes for his, which agreement was only now completed by the giving up of his notes; that instead of agreeing to loan out for the use of Mrs. Gordon $1,663 00 in cash, he in fact only undertook to see after the notes and *fi. fas.* already in his hands, collect them and reloan the money, and to guarantee any new papers on new men which might be the result of his operations. We think this cannot, under the law, be done by parol. Such evidence changes the whole warp and woof of the written agreement, makes it an entirely different undertaking, and falls, under the very terms of the rule which declares that it is not competent to contradict or explain a written agreement by parol.

We recognize the right to show the surrounding circumstances for the purpose of aiding in the construction of doubtful words or phrases in a written agreement: Code, 2757. But such is not this case. There cannot be the least uncertainty as to what notes are meant by the writing—it says, in plain terms, " my notes," and it agrees, in plain terms, to loan out " that amount," and to guarantee the notes and *fi. fas.* which might be the result of that loaning. To allow

this to be changed and altered by parol, so as to make the paper read, notes on A, B and C, to that amount, and I agree to look after the collection of said notes, reloan the money, and guarantee the payment of such new loans, would make the agreement an entirely different thing from what its plain language imports. Nor do we hesitate in applying this rule in the case at bar. The rule that the writing is the best evidence of a contract is·just as imperative in equity as at law. That a paper, by its very terms, imposes a hard duty, is no reason why it should be competent to show by parol that the terms expressed are not the terms agreed upon. Besides, we can easily understand why the very agreement expressed should, under the circumstances, have been entered into by Mr. Simmons. In February, 1865, most prudent men were· very anxious that coming events should not find them in debt. · Mrs. Gordon did not want the money in circulation, Mr. Simmons had plenty of it, and he might very well agree that if she would give him up his notes he would loan out that much money, and guarantee the solvency of the persons who might borrow it. This, then, looked far better than to leave his own notes unpaid, which, as Confederate money was not, even by the Confederate laws, a legal tender, he was compelled to do, if Mrs. Gordon would not consent for them to be paid.

There is nothing, therefore, in the charges of this bill to bring the case within any of the exceptions to the well-settled and salutary rule which forbids the parties to a written agreement to explain or contradict the writing. No fraud is charged ; no mistake in the execution of the instrument; it is the simple case of a man writing an agreement with his own hand and signing it, with his eyes open, undertaking in plain language to do one thing, and then undertaking to show, by parol, that he meant an entirely different thing. To permit this would be in the very teeth of the law. If men will carelessly write and sign and deliver written contracts, they must take the consequences. We think there is nothing in the objection that this demurrer came too late. It is always compe-

tent, even at the hearing, to dismiss a bill for want of equity, and this is this motion. It is not that there is a remedy at law, but that there is no remedy. That under the rules of law the case put by the complainant does not authorize the court to grant relief.

Judgment affirmed.