### ERSKINE & COMPANY *vs.* DUFFY.

1. A bill of exceptions to a judgment granting or refusing a new trial will not be dismissed on motion of defendant in error because it fails specifically to set forth the errors alleged to exist in said judgment, and the party be thereby deprived of a hearing, at least as to the general grounds usually relied on to obtain a new trial, or such as set out newly discovered evidence which might or should produce a different result on another trial. The motion and brief of evidence are parts of the record, and need not be set out in the bill of exceptions except by reference.

2. If the grounds of the motion plainly specify both the decisions complained of and the errors alleged to exist therein, under §4251 of the Code, this court would be bound to hear it under a general exception to the judgment granting or refusing the new trial; but if deficient in either of these particulars, this court would not, under such general exception, determine it, at least as to the particular point so complained of.

(*a*.) The sixth ground of the motion in this case complains of a charge given by the court, but does not specifically set forth what is the error alleged to exist therein, and cannot, therefore, be considered.

(*b*.) The charge complained of appears to have been warranted by the evidence.

3. The evidence was conflicting, the presiding judge was satisfied with the verdict, and this court cannot say that he abused his discretion in allowing it to stand.

4. It is not clear that the jury disregarded that portion of the charge of the court in which he construed a letter from plaintiff to defendants, in which occurred the expression, "Place the $700" (sent with the letter) "on interest," and instructed the jury that the legal effect of this letter was to give the defendants general authority to place the money mentioned for the plaintiff in the hands of some person who would pay him interest therefor. At all events, the charge itself was too broad and was not sufficiently qualified or guarded in its terms. Under the facts in evidence,

this was an ambiguous expression, the meaning of which should have been left to the jury.

(*a*.) For the court to treat as an instrument embodying the terms of the contract, and to construe in such a manner as to bind the jury, every expression found in a correspondence relating to the conduct of the business in pursuance of the contract, does not seem to be in accordance with the provisions of the Code conferring the power and making it the duty of the court to construe contracts, and other provisions qualifying and restricting this power.

5. Newly discovered evidence, which is merely cumulative and tends only to show admissions made in a casual conversation between the plaintiff and a witness, will not require a new trial; especially where the statements thus proposed to be proved are directly denied by the counter-affidavit of the other party to the conversation, and where the integrity of the affiant is assailed.

(*a*.) As a ground for a new trial, the discovery of new testimony is tolerated rather than favored, because of its liability to abuse and its tendency, as a general rule, to mislead.

March 23, 1886.

Practice in Supreme Court. New Trial. Charge of Court. Contracts. Newly Discovered Evidence. Before Judge CLARKE. City Court of Atlanta. September Term, 1885.

On June 25, 1884, Duffy brought suit against Erskine & Company on an open account for a balance of $1,247.49, principal. The defendant filed pleas of the general issue and set-off. On the trial, the issue was narrowed, so that the real point in controversy was this: The plaintiff, who was a peddler, purchased goods from the defendants, and in the course of his dealings with them remitted them money at various times. They deposited his funds in the bank of John H. James to his (the plaintiff's) credit, and took certificates of deposit bearing four per cent. interest. The bank failed, and the question was, whether the defendants were responsible to the plaintiff.

On this issue the plaintiff testified, in brief, as follows: The account sued on is correct. Commenced doing business with defendants in 1880. They proposed to allow him four per cent. interest on money left with them by him. He said

all right. Erskine said no matter what happened, the money plaintiff left with him was all right; that somebody would always be there, and the books would show it. This arrangement continued, and the defendants would allow him interest on the surplus money he sent them. He sometimes sent them money by express and sometimes by check, and they always acknowledged its receipt by letter. The letters (except one) were destroyed. In July, 1882, he had with them something over $1,000; he bought some goods, drew out the "odd money" and left $1,000 with them on interest. Erskine told him that they would not need his money any longer, and did not want to pay interest on it and would put it in bank. The plaintiff replied that he did not care what he (Erskine) did with it, so long as he was responsible. Erskine said all right. The plaintiff never knew he had put the money in the bank or saw the certificates of deposit. Erskine never showed them to him or told him about them until the bank failed. He wrote Erskine from Smithville for $700, and the latter sent it; but he did not use it and sent it back in a few days, and wrote Erskine to put it at plaintiff's interest. They rendered him accounts in 1882, 1883 and 1884. Supposes they showed $800 as paid to him, and that the amounts for which the certificates of deposit were given appear thereof. At one time the defendants failed to allow him interest on the account rendered; he called attention to it, and they corrected it. He never made any other complaint about them. In July, 1883, Erskine gave the plaintiff a pencil memoranda, showing the balance to his credit to be about $1,575, and in a few days the book-keeper gave him a statement showing the same thing. He was not in Atlanta when the $800 were deposited in the bank to his credit and never authorized it. Denied saying to Gillespie that if he failed in this suit, he would try the banker "a rap." The defendants wrote him two letters about the failure of the bank. He replied that he did not know the bank, and looked to them for his money.

The testimony for the defendants was, in brief, as follows: The plaintiff had been buying goods from the defendant for several years and kept with them some money for goods purchased, and on any surplus to his credit they had allowed him four and a half per cent. They had settlements every year. When the settlement took place in 1882, the plaintiff had to his credit $1,082.59. They had no further use for the money, and told him early in July, 1882, that they could not allow him interest any longer, and suggested that he put the money in bank where it would draw interest. He said all right, and for the defendants to take $800 of his money and deposit it in bank. It was understood that it was to be put in James's bank. The defendants did this and took certificate of deposit in the plaintiff's name. From that time the arrangement was that, when the plaintiff sent the defendants money, if he owed them, he was credited with it; if not, it was to be put on interest for him at James's bank. Erskine denied the statement of the plaintiff that the latter said he did not care what defendants did with the money, so long as they were responsible. Statements were given to the plaintiff about the first of July in each of the years 1882, 1883 and 1884,which showed that the $800 deposited had been charged against him on the defendants' books, and that credits had not been given him thereon for other amounts which they had deposited for him. He never objected to them, except as to the item of set-off now claimed by the defendants. The statement for 1883 showed $262.28 to his credit, and he said it was correct. Neither the defendants nor their book-keeper gave to the plaintiff a memorandum in July, 1883, showing that $1,500 was due him. They gave him a statement, showing $262.28 due him. In October following, he drew out $300, thus overdrawing his account. The defendants kept their own deposits at another bank, but James's was the only one that then allowed interest on deposits, and it then was in good standing. They wrote to the plaintiff when money was deposited in bank for him. When

the plaintiff wrote for the $700, one of the defendants endorsed the plaintiff's name on the certificate of deposit, drew out the money, sent him the $700 and deposited the balance. When the bank failed, a settlement was made, and one of the defendants signed the plaintiff's name to the agreement to so settle, because he thought it best; did not have special authority to do so. He did the same with others who had dealt with them as the plaintiff had.

A witness, Gillespie, testified that the plaintiff, shortly before the trial, said that if he failed to recover in it, he would " try John H. James a rap."

Several letters were introduced in evidence. One of them, dated January 1, 1883, returning the $700 to the defendants, contained the following statements :

" The money I now send back to you. Place the seven hundred on interest, the balance to credit to T. F. Farley. I did intend to try a new business, but come to think it would not pay; so I will still keep on the war-path for a while longer. I am very sorry I had to put you to so much trouble at this time of the year, for I know that you have not got much spare time," etc.

Another, dated January 18, 1883, stated that "I forwarded $100 yesterday. Place to my interest."

The jury found for the plaintiff the full amount sued for. The defendants moved for a new trial on the following grounds :

(1) to (4.) Because the verdict was contrary to law, evidence and the charge of the court.

(5.) Because the verdict was contrary to the following charge of the court: " It is the duty of the court to construe any written instrument which is introduced in evidence. Counsel have called attention to a letter from plaintiff to defendants, which is before you. I refer to the letter dated January, 1883, in which this expression occurs: ' Place the seven hundred dollars on interest.' I instruct you that the legal effect of this letter is to give defendants general authority to place the money mentioned, the seven hundred dollars, for the plaintiff in the hands of some person who would pay him interest therefor."

(6.) Because the court erred in charging the jury as follows: " If there was a course of dealing established between plaintiff and defendants, as debtor and creditor, the presumption is that the relation continued until the contrary is shown. If, therefore, there was such a course of dealing as I have mentioned, the burden of showing that it was changed is on the defendants, if they insist that it was."

(7.) Because of newly discovered evidence of one Brennon, to show that the plaintiff stated to him that he knew that the defendants had quit paying interest, and that his money was in James's bank. [A counter-showing as to this was made, and there were affidavits *pro* and *con* as to whether the defendants had had opportunity to find out what this witness knew before the trial, and as to whether he was intoxicated about the time of making the affidavit stating what he would testify. The plaintiff also made an affidavit denying the statements of the new witness.]

The motion was overruled, and the defendants excepted. The bill of exceptions recited the overruling of the motion, and added: " To which order the said defendants excepted and now excepts." A motion to dismiss the writ of error was made, on the ground that there was not a sufficient assignment of error. It was overruled, as stated in the decision.

MYNATT & HOWELL, for plaintiffs in error.

KING & SPALDING, for defendant.

HALL, Justice.

1. A bill of exceptions to a judgment granting or refusing to grant a new trial will not be dismissed on the motion of the defendant in error, because it fails specifically to set forth the errors alleged to exist in such judgment. The writ of error will not be dismissed for this reason, and

the party deprived of a hearing, at least as to the general grounds which are usually relied on to obtain a new trial, or such as set out newly discovered evidence which might or should produce a different result on another trial. The motion for a new trial, and the grounds thereof, have always, under our practice, been deemed an essential part of the record in the cause, and by the act of 1870, the brief of evidence filed with such motions and approved by the court was likewise made a part of the record, and, like the pleadings and other portions of the same, was not (except by reference thereto) required to be set out in the bill of exceptions. Code, §4253.

2. If the grounds of the motion shall plainly specify both the decision complained of and the error alleged to exist therein, in accordance with the requirements of §4251 of the Code, then this court would be bound to hear it under a general exception to the judgment granting or refusing the new trial prayed; but if deficient in either of these particulars, we would not, under such general exception, feel authorized to determine it, for we would be considering and deciding something not heard in the court whose sentence, judgment, decision or decree we are invoked to review, at least to the extent of the particular point specified as an error in the judgment or decision complained of. This course has been so frequently and uniformly pursued by this court, especially of late years, that it would be superfluous to cite the numerous cases in which it has been done. The 6th ground of the motion in this case, while plainly specifying a charge of the court, of which complaint is made, yet does not specifically set forth what is the error that is alleged to exist in the charge. It stated generally that the court erred in giving it, but why he erred is not stated on the record. This precludes its consideration here; and were we even at liberty to pass upon the error insisted on in argument, we should find ourselves unable to agree with the view presented with so much earnestness and force by the learned and

able counsel for plaintiffs in error, and therefore feel the less reluctance in disposing of it as we have done. The principles of law embodied in the charge are not seriously questioned, but it is urged that they are inapplicable to the facts in evidence; in short, that there was no evidence that could authorize it. We, however, think otherwise, and are pretty well satisfied that certain aspects of the proof not only justified, but required the charge given.

3. The testimony of the parties as to the material facts in the case was directly in conflict. The jury had the right to credit the plaintiff's account of the matter, and to reject the defendants', as they seem to have done. The presiding judge who heard the witnesses testify, and saw their manner of testifying, found no fault with their conduct in this respect, and was satisfied to let their verdict stand. We cannot say that in so doing he abused the discretion vested in him, not in us, by the law. Besides, we are inclined to think that there were several circumstances, which were neither denied nor explained, that tended to corroborate the plaintiff's statement, and that the verdict is rather in accordance with than against the weight of evidence. What has been said disposes of the first four grounds of the motion for a new trial.

4. In another ground of the motion (the 5th) it is insisted that the verdict was contrary to this charge of the court, viz.: "It is the duty of the court to construe any written instrument introduced in evidence. Counsel have called attention to a letter from plaintiff to defendants, which is before you. I refer to the letter of January 1st, 1883, in which this expression occurs: 'Place the seven hundred dollars' (sent with the letter) 'on interest.' I instruct you that the legal effect of this letter is to give the deferdants general authority to place the money mentioned, the seven hundred dollars, for the plaintiff in the hands of some person who would pay him interest therefor." When taken in connection with the facts in proof, and with other parts of the charge applicable to those facts, it is not clear

v 76-39

to our mind that this part of charge was disregarded or overlooked by the jury in finding their verdict. But whether this is so or not, we are satisfied that the charge itself was too broad and sweeping, that it was not sufficiently qualified and guarded in its terms; and from what occurred after the verdict was returned, we think the judge was of that opinion himself, and concluded that, inasmuch as the jury had, by their finding, rectified the error into which he had inadvertently fallen, he would not disturb it. In view of the course of dealings between these parties, and the modification or slight alteration made therein in July, 1882, as respects the defendants' liability for interest, as the plaintiff testified, and their non-liability, as was testified for them, we think the expression, "place the $700 on interest," was ambiguous, and did not justify the inference the court drew from it, viz., that it conferred general authority upon the defendants to place it in the hands of any person who would pay interest for it. If the plaintiff's contention was correct, such was certainly not the meaning of the expression. At all events, it was a question for the jury, and should have been submitted for their determination, with proper instructions from the court.

To say the least, the propriety of the court's treating as an instrument embodying the terms of the contract, and construing it in such a manner as to bind the jury, every expression found in correspondence relating to the conduct of the business in pursuance of the contract, seems not in accordance with the provisions of the Code conferring the power and making it the duty of the court to construe contracts, and other provisions qualifying and restricting this power, as interpreted by our judgments and as regulated by common law rules. *Hall's Self-Feeding Cotton-Gin Co. vs. Black*, 71 *Ga.*, 450, and citations; 2 Wharton's Contracts, §450.

5. The remaining ground relates to the newly-discovered evidence, which, we think, is merely cumulative, and is by

no means of a conclusive nature or tendency, as it professes only to give admissions made in a casual conversation between the plaintiff and the witness—a species of evidence which should, under the most favorable circumstances, be scanned with care. Code, §3792. In this case, the conversation was directly denied by the counter-affidavit of the other party to it, and the integrity of the affiant of it was assailed. The court, in the exercise of its discretion, could say which of these parties was entitled to credit, and we have no power to control his discretion, unless it shall be satisfactorily shown to us it has been abused, and in this instance there is no reason to impute to the presiding judge such an abuse of discretion. As a ground for a new trial, the discovery of new testimony is tolerated rather than favored, because of its liability to abuse, and its tendency, as a general rule, to mislead. Ex parte affidavits, gotten up after the verdict and after the exigencies of the case have been fully disclosed, and with a view to meet and overcome these exigencies, and where no opportunity of cross-examination is afforded the other party, are certainly not altogether free from suspicion, and, under the circumstances, should be scanned more closely, and received and considered with more than ordinary caution, especially when they set forth verbal admissions only.

Judgment affirmed.