## ILLGES *vs.* DEXTER

[Blandford, J., being disqualified, Judge Clarke, of the Atlanta circuit, presided in his stead.]

As a general rule, the construction of a contract is a question for the court; but where the terms of a written instrument are ambiguous, its meaning should be left to the jury.

(*a.*) The stockholders of a railroad entered into an agreement to sell the road to one Logan, through his agent, Garrard, for $100,000, providing in the agreement that it should remain binding for only thirty days, and that, in the event of the sale, the stockholders should execute quit-claim deeds to all their right, title and interest. The contract was dated April 12, 1881. On May 12, it was extended for thirty days, it being stated that "the option for the sale and purchase of our stock in said railroad" was extended. No sale having been completed to Logan, and the stockholders still desiring to sell, they gave to one Dexter the following agreement: " We, the undersigned stockholders in the Columbus and Rome Railroad Company, do hereby extend the option on sale of Columbus and Rome Railroad heretofore granted to Louis F. Garrard, on April 12, 1881, and expiring on June 12, 1881, to Armory Dexter, to commence on the 12th day of June, and to expire on the 12th day of July, 1881 :"

*Held*, that this agreement was not ambiguous, and was properly construed by the court. It fixed the price by reference to the former agreement, and under it Dexter could either buy for himself or another, provided he paid that price.

(*b.*) In construing contracts, it is important to look to the substantial purpose which must be supposed to have influenced the minds of the parties, rather than at the details of making such purpose effectual.

June 1, 1886.

Construction. Contracts. Sales. Before Judge WILLIS Muscogee Superior Court. November Term, 1885.

Reported in the decision.

SMITH & RUSSELL; W. A. LITTLE, for plaintiff in error.

PEABODY & BRANNON, for defendant.

CLARKE, Judge.

This case is here on a refusal of the judge of the court

below to grant a new trial. The main ground in the motion relates to the charge of the court in reference to certain writings, which are hereinafter particularly mentioned. The judge construed these writings, and his construction controlled the verdict. The plaintiff in error says that the papers are ambiguous, and that the jury should have ascertained their meaning; and further, that if they are certain in their terms, the interpretation of the court was erroneous.

The principles of law involved in this motion are simple and familiar. The general rule unmistakably is that the construction of a contract is a question for the court. Code, §2754; 36 *Ga.*, 454. On the other hand, it is equally clear that where the terms of a written instrument are ambiguous, its meaning should be left to the jury. Code, §§2757, 3801, 3804; 52 *Ga.*, 572; 51 *Id.*, 603; 57 *Id.*, 36; 61 *Id.*, 364; *Erskine vs. Duffy*, present term (76 *Ga.*, 602).

Two questions, then, present themselves for our determination. One is, whether the terms of the contract between the stockholders of the Rome and Columbus Railroad Company and the defendant are uncertain in their meaning; the other is, whether, if the contract is free from ambiguity, the construction placed on it by Judge Willis is correct. The former of these questions must be solved through the study, not only of the agreement between such stockholders and the defendant, but the agreement therein referred to between them and Mr. Garrard. Probably this inquiry can be most successfully conducted by beginning with the latter contract. What, then, were its terms? The principal and controlling provision in it is an engagement by the stockholders to sell the railroad to General Logan through his agent, Mr. Garrard, for $100,000. There are two other provisions which are incidental and subordinate to this main purpose. One is that the agreement to make the sale shall be binding for only thirty days; the other relates to the mode of conveyance in the

event of a sale, and provides that the stockholders shall execute quit-claim deeds to all their "right, title and interest," under the deed which they had from the governor of the state.    That such is the true construction of the contract now under consideration, seems to us perfectly clear.    It was dated April 12th, 1881, and by its own terms expired within thirty days.    It appears that no sale occurred in the period named.    On May 12th, 1881, another agreement was entered into between the stockholders and Mr. Garrard, agent, as aforesaid.    This contract simply extends for thirty days the time within which the former shall be of force.    It is true this supplementary contract speaks of extending "the option for the sale and purchase of our stock in said railroad," thereby introducing the new words "option" and "purchase."    We apprehend that no change in the meaning of the original instrument was intended by this variation in phraseology.    A sale necessarily involves a purchase, and in drawing the paper, the writer doubtless employed both words to denote the same transaction, the word sale describing it from the vendor's standpoint, and the word purchase describing it from the vendee's relation to it.    The word "option" means privilege, and in this connection makes no material difference in effect.

The proposition to sell to General Logan, through Mr. Garrard, produced no results.    At the end of the sixty days, during which it remained open, the railroad was still in the hands of the stockholders, and they still desired to sell it.    In this state of affairs, the writing between the stockholders and the defendant was signed.    It will, of course, be noted that, so far, the only purpose shown by the instruments which they had executed was a purpose to sell.    But one price had been named and but one buyer contemplated.    That price was $100,000, and that buyer General Logan.    No agency had been mentioned except an agency for the purchaser.    The sellers were to act for

themselves. The paper made between the stockholders and the defendant is as follows:

" We, the undersigned stockholders in the Columbus and Rome Railroad Company, do hereby extend the option on sale of Columbus and Rome Railroad heretofore granted to Louis F. Garrard, on April 12th, 1881, and expiring on June 12th, 1881, to Armory Dexter, to commence on the 12th day of June and to expire the 12th day of July, 1881.

| (Signed) | E. C. Hood, | A. Illges, |
| | Louis F. Garrard, | Thos. J. Nuckolls, |
| | P. Preer, | T. E. Blanchard, |
| | L. M. Burrus, | M. E. Gray." |

The dominating idea here is the one expressed in these words, " We, the undersigned stockholders in the Columbus and Rome Railroad, do hereby extend the option on sale of Columbus and Rome Railroad heretofore granted to Louis F. Garrard . . . to Armory Dexter." The other language merely mentions, as matter of description, the date of the Garrard proposition, and limits the time within which the present one is to be obligatory. What, then, are Mr. Dexter's rights under this contract? Does it confer upon him right to purchase at a stipulated price, as his counsel insist, or does it appoint him agent to sell for the stockholders, as counsel for Mr. Illges contend? If there was no reference to Mr. Garrard, so that the paper read, " We, the stockholders, do hereby extend the option on sale of Columbus and Rome Railroad to Armory Dexter," there would be an ambiguity growing out of the phrase, "the option on sale." It might mean the privilege on the sale of the road, to sell it, or the privilege, on such sale, to buy it. We think that there is no ambiguity, when the reference to the Garrard proposition is considered. " The option" which the agreement gives Dexter is " the option " which Garrard had. What, then, was that? Literally it was an option to buy at the price of $100,000, as agent for General Logan.

In construing contracts, it is important to look to the substantial purpose which must be supposed to have influ-

enced the minds of the parties, rather than at the details of making such purpose effectual. Lieber's Her., 100, 135, 160.

Dealing thus with the Dexter agreement, we may fairly suppose that the Garrard proposition was in the thoughts of the stockholders, not so much to fix what particular individual should be the purchaser of the road as to settle, as a vastly more important element, the price at which it should be sold. It is to be noted in this connection that in no other way is any value set upon the property in the transaction with Mr. Dexter. We conclude, then, that the stockholders did not intend to treat with Mr. Dexter as one whose "option" embraced in it an agency for General Logan, but one whose "option" was the same as Mr. Garrard's, in that it included the privilege of buying the road at the same price named to him. If this construction is correct, Mr. Dexter could either buy for himself or another, provided he paid $100.000. This is the view presented by the circuit judge, and we assent to it as sound.

Judgment affirmed.